UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

RYAN BOARD,

        Plaintiff,               Case No. 2:20-cv-126

v.                                  Honorable Paul L. Maloney

KIRK RADTKE et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.    Factual allegations**

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following URF

officials: Correctional Officer Kirk Radtke; Sergeant William Sturm; and PREA (Prison Rape Elimination Act) Coordinators Lisa Belanger and Duncan Martin.

Plaintiff alleges that, in 2009, shortly after he was convicted and sentenced as a juvenile on convictions for armed robbery and felony firearm, he was sexually assaulted in the MDOC. Since that time, he has struggled to cope with the psychological consequences, and he fears being touched by anyone.

On July 2, 2018, Plaintiff was standing in the prison yard with other inmates. He had his hands tucked down the front of his pants, a habit shared by many black youths. Defendant Radtke and Officer Mclaramore (not a Defendant) approached Plaintiff, asking why his hands were in his pants. Plaintiff removed his hands and declared that he had nothing. Defendant Radtke stated that he believed that Plaintiff possibly was hiding a pair of dice, which are banned under prison policy prohibiting gambling. *See* MDOC Policy Directive 03.03.105 Attach. B. Radtke and Mclaramore therefore escorted Plaintiff to the prison annex control center to be strip searched.

In the health-care waiting room adjacent to the annex control center, Mclaramore instructed Plaintiff to remove his clothing. Plaintiff removed his shirt, pants, shoes, and athletic shorts, but before he could remove his underwear, Defendant Sturm entered the room and ordered Plaintiff to stop undressing. Sturm told Plaintiff to pick up his clothing and follow Sturm to another room in the health-care office. In the new room, Defendant Sturm ordered Defendant Radtke to perform a pat-down search of Plaintiff.

While performing the search, Defendant Radtke stuck his hand down the back of Plaintiff's underwear and manipulated Plaintiff's genitals and buttocks. Humiliated, Plaintiff jerked away, objecting to Radtke's actions and threatening to file a grievance. Defendant Sturm told everyone to calm down and told Defendant Radtke, "[L]et me speak to you a moment."

(Compl., ECF No. 1, PageID.)  The two stepped out of the office for a minute, and then Defendant Sturm returned with another officer.  Defendant Sturm told Plaintiff to dress and have a seat.

Later that day, Plaintiff received a Class-I misconduct ticket on the charge of possessing a dangerous weapon.  As a result of the ticket, Plaintiff spent 15 total days in segregation.  On the day he left segregation, a Michigan State Police officer came and collected the weapon.  Plaintiff claims that Defendant Radtke fabricated the ticket in retaliation for Plaintiff's threat to file a grievance.

Plaintiff filed a Step-I PREA complaint with the grievance coordinator.  While he was in segregation, Plaintiff was interviewed by PREA officials, presumably Defendants Belanger and Martin, who allegedly attempted to intimidate Plaintiff into dropping the PREA charge by threatening him with criminal charges for possessing a weapon.  Following subsequent interviews, Defendants Belanger and Martin delayed providing Plaintiff with a Step-II appeal form.

In November 2018, Plaintiff was charged and arraigned in the Chippewa County Circuit Court on the offense of being a prisoner in possession of a dangerous weapon, Mich. Comp. Laws § 800.283(4).  Following a jury trial, Plaintiff was convicted of the offense.  On January 7, 2020, the court sentenced Plaintiff as a third-offense felony offender, Mich. Comp. Laws § 769.11, to a prison term of 2 years, 6 months to 10 years.  *See* MDOC Offender Tracking Information System (OTIS), http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=766060.

Plaintiff alleges that, as a result of the actions of Defendants Radtke and Sturm in searching him, he has suffered many sleepless nights and anxiety attacks at the thought of being touched by anyone.  He contends that Defendants Radtke and Sturm sexually abused him, in violation of federal law, during a strip search.  He also alleges that Defendants Radtke, Sturm, Belanger, and Martin conspired, in violation of federal law, to fabricate charges against him, in

3

retaliation of Plaintiff's filing of a PREA grievance. In addition, he contends that all Defendants violated federal law by causing him mental and emotional distress. He further argues that Defendants Radtke and Sturm violated state law by their gross negligence of sexual abuse during a strip search. Finally, he alleges that Defendants Radtke and Sturm committed the state tort of intentional infliction of emotional distress.

Plaintiff seeks declaratory relief, together with compensatory and punitive damages.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III.    Strip search

Plaintiff complains that Defendants Radtke and Sturm violated his constitutional rights by conducting or supervising a strip search[1] that included the jostling of Plaintiff's genitals and buttocks. Plaintiff appears to suggest that Defendants' conduct violated his rights under the Fourth and Eighth Amendments.

### A.    Fourth Amendment

Both the Supreme Court and the Sixth Circuit have recognized that, under the Fourth Amendment, prisoners and detainees may be subjected to strip searches and body-cavity searches without individualized suspicion. *See Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 333-34 (2012) (rejecting the argument that correctional officials need reasonable suspicion to conduct visual body-cavity searches upon inmates at the time they are admitted to the general jail population); *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 575 (6th Cir. 2013) ("[S]uspicionless strip searches [are] permissible as a matter of constitutional law . . . ."); *see also*

---

[1] As noted earlier in this opinion, Plaintiff was not truly strip-searched. He remained in his underpants. In addition, Plaintiff makes no allegation that he was subjected to a body-cavity search.

5

*Salem v. Mich. Dep't of Corr.*, 643 F. App'x 526, 529 (6th Cir. 2016). Nevertheless, strip searches "may be unreasonable by virtue of the way in which [they are] conducted." *Williams v. City of Cleveland*, 771 F.3d 945, 952 (6th Cir. 2014) (holding that searches must be conducted in a manner that is reasonably related to the jail's legitimate objectives and that allegations that female prisoners were forced to sit on a chair and spread their labia in unsanitary conditions and in full view of other prisoners were sufficient to state a claim for unreasonable search and seizure) (citing *Stoudemire*, 705 F.3d at 574). In determining the reasonableness of a search, courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Stoudemire*, 705 F.3d at 572 (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

Plaintiff's allegations fail to state a claim about the manner in which Defendants conducted the strip search. Here, unlike in *Williams*, 771 F.3d 945, Plaintiff was searched in a private room, outside the view of other prisoners. He was not fully strip-searched; indeed, he was still allowed to wear his underpants. Defendants did not perform a body-cavity search. Instead, Defendant Radtke merely jostled Plaintiff's buttocks and genitals during his search for contraband. The search, as alleged, did not violate the Fourth Amendment.

### B. Eighth Amendment

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

Plaintiff's claim that he was strip-searched must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986).

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321); *accord McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). Prisoners may be strip searched under circumstances that are reasonably related to the legitimate penological interest of security and order. *See Roden v. Sowders*, 84 F. App'x 611, 613 (6th Cir. 2003) (citing *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992)).

Plaintiff's claim fails because it is clear from his allegations that there was a penological justification for the strip search, and the measures used were constitutionally permissible. Plaintiff was strip searched because he had his hands down his pants in the yard and officers suspected that he had contraband gambling paraphernalia. While Plaintiff claims that he

7

had nothing, the search was reasonably related to the officers' suspicions that Plaintiff possessed contraband in violation of prison policy. Furthermore, Plaintiff was moved to a private area for the search, and the search was limited to visual and manual examination of his external body parts.

Moreover, Sixth Circuit has, on several occasions, found no Eighth Amendment violation for pat-down searches that involved isolated touching of genitalia, even when some sexual component has been alleged. *See, e.g., Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320-21 (6th Cir. 2012) (two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis and pressing an erect penis into the prisoner's buttocks, do not rise to the level of a constitutional violation); *Tuttle v. Carroll Cty. Detention Ctr.*, 500 F. App'x 480, 482 (6th Cir. 2012) (allegation that officer grabbed the detainee's genitals and "squeezed them really hard" during a pat-down search is too "subjective and vague" to state a claim); *Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (prisoner's claim that an officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not state an Eighth Amendment claim); *see also Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

Here, although Plaintiff characterizes Defendant Radtke's conduct as degrading and sexually triggering, he does not even allege that Radtke acted for sexual gratification or other malevolent purpose. Plaintiff alleges no facts that would distinguish the facts in his case from those in the foregoing cases. Indeed, Plaintiff's allegations are more "subjective and vague" than the allegations in *Tuttle*. *See Tuttle*, 500 F. App'x at 482. Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendants Radtke and Sturm.

## IV. Conspiracy

Plaintiff alleges that Defendants conspired to fabricate a misconduct charge against him for possessing a weapon in retaliation for his threat to file and filing of a PREA grievance against Defendant Radtke. He also suggests that Defendants conspired to have him criminally charged for the offense of being a prisoner in possession of a dangerous weapon.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

9

Plaintiff's allegations of conspiracy are conclusory and speculative. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. Plaintiff claims only that Defendant Sturm was present when Plaintiff he was searched by Defendant Radtke and that Radtke subsequently issued a misconduct charge. He alleges no active conduct by Defendant Sturm, nor does he provide any other factual allegation that would support an inference that Defendant Sturm acted jointly with Defendant Radtke. Indeed, Defendant Sturm allowed Plaintiff to keep his underpants on and moved Plaintiff to a more private place for the search. Defendant Sturm may not be held liable simply as Defendant Radtke's supervisor. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978). Plaintiff fails even to suggest that Defendant Sturm engaged in other active conduct that would subject him to liability under § 1983. *See Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Plaintiff's conclusory allegation that Defendant Sturm conspired with Defendant Radtke therefore fails to state a claim.

Moreover, Plaintiff's allegations against Defendants Belanger and Martin are equally conclusory. Plaintiff is unhappy with the way that Defendants Belanger and Martin investigated his PREA claim, but no factual allegations link their conduct to an unlawful agreement among the Defendants. Their conduct may have operated in parallel with Defendant Radtke's issuance of the misconduct charge. Nevertheless, as the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful,

unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. Plaintiff's conclusory allegations therefore fail to state a plausible claim of conspiracy.[2]

## V.     Retaliation

Plaintiff alleges that Defendants retaliated against him for threatening to file or filing a grievance about Defendant Radtke's search. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Both Plaintiff's threat to file a grievance and his filing of a grievance are protected conduct. An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 299 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they

---

[2] Even assuming that Plaintiff's allegation that Defendants conspired to have him criminally charged with being a prisoner in possession of a weapon was sufficient to state a claim, Plaintiff's conspiracy claim would be barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), as discussed *infra*.

11

are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741). Plaintiff therefore was engaged in protected conduct when he threatened to file and filed a grievance.

To the extent that Plaintiff complains that Defendant Radtke falsified a false Class-I misconduct charge against him, Plaintiff's allegations are sufficient to allege adverse action. *See Maben*, 887 F.3d at 266-67 (holding that even the filing of a false minor-misconduct charge can be sufficiently adverse to support a retaliation claim) (citing *Hill v. Lapin*, 630 F3d 468, 474 (6th Cir. 2010) (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse")).

Plaintiff, however, utterly fails to allege that Defendant Sturm engaged in any adverse action. His retaliation claim against Sturm therefore fails at the second step.

In addition, Plaintiff's allegations against Defendants Belanger and Martin fall short of showing adverse action. Plaintiff alleges no more than that Defendants Belanger and Martin refused to take his PREA grievance seriously and suggested he withdraw it, in light of the impending criminal prosecution against Plaintiff. The Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim. *See, e.g., Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017); *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005); *Kennedy v. Tallio*, 20 F. App'x 469, 471

(6th Cir. Sept. 26, 2001). Placement on modified access would not deter a person of ordinary firmness from continuing to engage in protected conduct, because modified-access status does not impair the ability to file civil rights actions in federal court. A plaintiff's placement on modified access to the grievance procedure merely enables prison officials to screen a prisoner's grievances prior to filing to determine whether they were grievable, non-frivolous, and non-duplicative. *See Kennedy*, 20 F. App'x at 471 (citing Mich. Dep't of Corr. Policy Directive 03.02.130(II)(PP)). For the same reasons that placement on modified grievance access does not amount to adverse action, an official's rejection of or refusal to process a grievance is not sufficiently adverse to state a retaliation claim. *See, e.g.*, *Branch v. Houtz*, No. 1:16-cv-77, 2016 WL 737779, at *6 (W.D. Mich. Feb. 26, 2016).

Moreover, Plaintiff makes no allegation that Belanger or Martin initiated the criminal prosecution, and, as MDOC officials, they had no authority over whether the county prosecutor brought charges. Even if they did threaten that Plaintiff would be prosecuted, the threat was meaningless, given their lack of authority. A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542. Based on the limited allegations contained in the complaint, Plaintiff fails to show that Defendants Belanger and Martin, even if they made threats about Plaintiff's impending prosecution, actively engaged in adverse action.

13

Plaintiff's retaliation claim against Defendant Radtke fails at the third step of the *Thaddeus-X* standard, because his claim is wholly conclusory. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Moreover, even if Plaintiff's claim against Defendant Radtke were deemed sufficient to state a claim, Plaintiff is barred from obtaining relief on that claim. A prisoner's claim that he was falsely accused of a major misconduct is barred where there has been a finding of guilt. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding has preclusive effect and is not subject to challenge in a § 1983 action). However, as the Sixth Circuit subsequently qualified in *Roberson v. Torres*, 770 F.3d 398 (6th Cir. 2014), not every factual finding is entitled to preclusive effect. Instead,

> the question of preclusion cannot be resolved categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so—not just in theory, but in practice. [*Peterson*, 714 F.3d] at 916-17. It likewise turns on the court's "sense of justice and equity," *Blonder-Tongue Labs., v. Univ. of Ill. Found.*, 402 U.S. 313, 334 (1971), which may require a case-by-case analysis of surrounding circumstances.

*Roberson*, 770 F.3d at 404-05.

In *Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018), the Sixth Circuit further clarified the limitations of the preclusion doctrine, as follows:

> To determine whether we must give preclusive effect to "factfinding from Michigan prison hearings," we look to four requirements, all of which must be met: (1) the state agency "act[ed] in a 'judicial capacity'"; (2) the hearing officer "resolved a disputed issue of fact that was properly before it"; (3) the prisoner "had an adequate opportunity to litigate the factual dispute"; and, (4) if these other three requirements are met, we must "give the agency's finding of fact the same preclusive effect it would be given in state courts." *Peterson v. Johnson*, 714 F.3d 905, 911-13 (6th Cir. 2013) (internal citation and quotation marks omitted).
>
> In *Peterson*, the Court considered, as a matter of first impression, whether a hearing officer's factual determination at a Michigan *major* misconduct hearing has preclusive effect in litigation brought by a prisoner under § 1983. *Id*. at 908, 911. The Court concluded that, because all four requirements were met, the "hearing officer's *factual* finding that [the prisoner] was the one who grabbed [the officer's] hand precludes a contrary finding in federal court." *Id*. at 917. In *Roberson v. Torres*, the Court considered the same issue, and identified the four requirements listed above. 770 F.3d 398, 403-04 (6th Cir. 2014). The Court said that *Peterson* does not mean that "any factual findings by a hearing officer in a major-misconduct hearing in a Michigan prison are to be accorded preclusive effect." *Id*. at 404. "*Peterson* is not a blanket blessing on every factual finding in a major-misconduct hearing." *Id*.
>
>> Indeed, the question of preclusion cannot be resolved categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so—not just in theory, but in practice. It likewise turns on the court's sense of justice and equity, which may require a case-by-case analysis of surrounding circumstances.
>
> *Id*. at 404-05 (internal citations and quotation marks omitted). The Court declined to decide the preclusion question and remanded the case to the district court to consider the argument for the first time. *Id*. at 405. The Court instructed the district court to "give particular attention to the fairness and accuracy of the factual findings made by the major-misconduct hearing officer." *Id*. The Court advised that "[n]umerous inquiries may be relevant to the district court's analysis," like "why the hearing officer refused to review the alleged video of the incident, whether the hearing officer provided a sufficient and reasonable basis for her factual findings, and whether the testimony of other witnesses corroborated the accounts provided by either [the prisoner] or [the officer]." *Id*. at 405.

*Maben*, 887 F. 3d at 259.

In the instant case, Plaintiff acknowledges that he was convicted of the Class-I misconduct charge. Plaintiff does not dispute that he had the ability to challenge the truthfulness of the charge in a Class-I misconduct proceeding before an administrative law judge, as described in *Maben*, *Roberson*, and *Peterson*, and the factual truthfulness of the allegation that he possessed a weapon was central to his being found guilty. In fact, while Plaintiff makes a conclusory allegation that the charge was falsified, he never denies that he possessed a weapon.

Moreover, beyond the Class-I misconduct proceedings, Plaintiff received a jury trial on the criminal offense of being a prisoner in possession of a weapon. His claim therefore is precluded for an additional reason.

In arguing that the misconduct charge for possessing a weapon was fabricated, Plaintiff effectively challenges the validity of his incarceration on his conviction for being a prisoner in possession of a dangerous weapon at the date and time in issue. A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). Therefore, to the extent that Plaintiff's complaint challenges the fact or duration of his incarceration, it must be dismissed. *See Adams v. Morris*, 90 F. App'x 856, 858 (6th Cir. 2004) (dismissal is appropriate where § 1983 action seeks equitable relief and challenges fact or duration of confinement); *see also Moore v. Pemberton*, 110 F.3d 22, 23-24 (7th Cir. 1997) (reasons for not construing a § 1983 action as one seeking habeas relief include (1) potential application of *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) differing defendants, (3) differing standards of § 1915(a)(3)

and § 2253(c), (4) differing fee requirements, (5) potential application of second or successive petition doctrine or three-strikes rules of § 1915(g)).

Moreover, to the extent Plaintiff seeks injunctive, declaratory and monetary relief for Defendant Radtke alleged violations of Constitutional rights in charging him with the offense of being a prisoner in possessing a weapon, his claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (emphasis in original). In *Heck*, the Supreme Court held that a state prisoner cannot make a cognizable claim under § 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87 (footnote omitted). The holding in *Heck* has been extended to actions seeking injunctive or declaratory relief. *See Edwards*, 520 U.S. at 646-48 (declaratory relief); *Clarke v. Stalder*, 154 F.3d 186, 189-90 (5th Cir. 1998) (claim for injunctive relief intertwined with request for damages); *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401, at *1 (6th Cir. May 5, 1998) (injunctive relief). Plaintiff's allegations clearly call into question the validity of his conviction. Therefore, to the extent that Plaintiff complains that Defendant Radtke (or any other Defendant) falsely accused him of possessing a weapon, his claim is barred under *Heck* until his criminal conviction has been invalidated.

**VI.     State-Law Claims**

Plaintiff alleges that Defendants' actions constituted the state torts of intentional infliction of emotional distress and gross negligence of sexual abuse. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will dismiss without

prejudice Plaintiff's state-law claims. Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   September 23, 2020             /s/ Paul L. Maloney
                                                              Paul L. Maloney
                                                              United States District Judge